UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN W. MILLER,

                Plaintiff,

v.                                              Case No.  5:04-cv-307-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying his application for a period of disability and

disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 3), and

both parties have filed briefs outlining their respective positions. (Docs. 6 & 7.) For the

reasons discussed below, the Court finds that the Commissioner's decision is due to be

**AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on September 18,

2001, alleging a disability onset date of April 7, 2000. (R. 47.) Plaintiff's application was

denied initially, and upon reconsideration. (R. 30 & 38.) Thereafter, Plaintiff timely

pursued his administrative remedies available before the Commissioner, and requested

a hearing before an Administrative Law Judge ("ALJ"). (R. 37.)

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

The ALJ conducted Plaintiff's administrative hearing on December 22, 2003. (R. 215 - 233.) Plaintiff was represented by legal counsel at the hearing. The ALJ issued a decision unfavorable to Plaintiff on February 20, 2004 (R. 13-21), and Plaintiff filed a timely request for review of the hearing decision with the Social Security Administration's Office of Hearings and Appeals. The Appeals Council denied Plaintiff's request for review on April 28, 2004 (R. 3 & 7), making the hearing decision the final decision of the Commissioner. On July 2, 2004, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II.  <u>ISSUES PRESENTED</u>

On appeal, Plaintiff argues that the ALJ erred by resorting to the medical-vocational grids despite the "fact" that he suffered from severe non-exertional impairments consisting of debilitating headaches, back and shoulder pain, and depression.[2]

In response, Defendant maintains that it was proper to rely on the grids because substantial evidence of record demonstrates that Plaintiff has never suffered from a severe non-exertional impairment.

---

[2] Plaintiff's five-page memorandum also contains one sentence which suggests that the ALJ erred by relying on Medical Vocational Rule 201.25 to obtain a finding of not disabled because Plaintiff does not satisfy the rule's "limited education" requirement. In short, Plaintiff suggests that he is functionally illiterate. As the evidence of record demonstrates that: (1) Plaintiff himself stated he has no difficulty reading, writing, or doing simple arithmetic; (2) he has completed various papers included in the application process; (3) he reads at the 10th grade level; and (4) he was studying for his GED during the application process, the ALJ's reliance on Rule 201.25 is supported by substantial evidence, and Plaintiff's argument is due to be summarily rejected. *See* R. 150-151, 183.

### III. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[3] *See* 42 U.S.C. § 405(g).

[4] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] <u>Keeton v. Dep't Health and Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

---

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy

---

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[17] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[18] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[19] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker at 1003.

that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

## IV. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was born on June 2, 1961. (R. 47.) He was forty (40) years old at the onset date of his alleged disability (*Id.*), and forty-two (42) years old when the ALJ rendered his decision in this case. (R. 14.) Plaintiff completed at least the 9th grade of education, and has undertaken efforts to complete his GED.[24] (R. 86, 150-151 & 183.) He has worked as a tug boat worker and off-shore drilling laborer, but most recently he has worked as a mechanic. (R. 81, 226-227.) Plaintiff's work as a mechanic required him to use machines and technical skills and knowledge. (R. 81.) The job also required him to lift up to one-hundred (100) pounds occasionally and up to fifty (50) pounds frequently. (*Id.* & 226.)

In a disability report, Plaintiff alleged an inability to work beginning on April 7, 2000, due to an injury at work. (R. 80.) His neck and lower back hurt most of the time and he could only lift fifteen (15) pounds due to pain. (*Id.*)

---

[21] <u>Wolfe</u> at 1077-78.

[22] *See* Id.

[23] *See* <u>Doughty</u> at 1278 n.2.

[24] Although Plaintiff reported in his disability report that he completed only 9th grade, he reported to health care professionals that he completed the 10th grade, and quit school to attend to "family problems." (R. 150.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffers from cervical, thoracic, and lumbar spinal strain and right shoulder impingement syndrome status post two arthroscopic surgeries - impairments which are severe within the meaning of the regulations, but do not meet or medically equal any impairment listed at Appendix 1, Subpart P of Regulations No. 4. (R. 17.)

Plaintiff was injured at work when he fell off of a two (2) foot high chair on April 6, 2000. (R. 143.) An X-Ray of the lumbar spine conducted on April 9, 2000 showed no acute abnormality or destructive process. (R. 90.) An X-Ray of his cervical spine showed decreased space at C5 and C6 with no acute bony abnormalities. (R. 143.) On examination, Plaintiff was diagnosed with cervical and thoracolumbar[25] strain. (R. 144.) Dr. Lloyd Kim of the Workers Health Care Clinic placed him on restricted duty with no twisting or bending at the waist. (*Id.*)

As early as April 20, 2000, Plaintiff reported to Kim that his neck was much better, showed a full range of motion in the cervical spine with no pain on palpation, but he did experience some discomfort in the thoracolumbar region. (R. 140.) It was noted that Plaintiff had been released from his job at that point. (*Id.*)

Plaintiff underwent an MRI of the spine on May 12, 2000 - he requested the MRI because it was his opinion that an X-Ray can "miss things." (R. 137.) The MRI of the lumbar spine revealed no evidence of stenosis, disc herniation, or degenerative disc

---

[25] The thoracolumbar spine is part of the spine or vertebral column that extends through the chest and lumbar region, comprising the 12 thoracic vertebrae and the 5 lumbar vertebrae. 5 Attorneys' Dictionary of Medicine 715.

disease. The MRI of the cervical and lumbosacral spine were "completely normal with

no abnormal findings," (R. 129) with the exception of a diffuse disc bulge at C5-C6. (R.

134.) Finally, an MRI of the thoracic spine revealed was normal, with no evidence of a

disc herniation or spinal stenosis, but with some evidence of mild degenerative

discogenic changes. (R. 133.) By May 16, 2000, Dr. Kim discharged Plaintiff for full duty

with 0% partial impairment. (R. 131.)

On June 12, 2000, Dr. Troy Lowell of the Ocala Orthopaedic Group examined

Plaintiff. (R. 102.) Lowell noted neck and right shoulder pain, and stated that Plaintiff

could be suffering from "simple degenerative change." (*Id.*) Three months later, Plaintiff

presented to Dr. Christopher Manseau, also of the Ocala Orthopaedic Group, who

opined that Plaintiff's tenderness in the cervical spine and right shoulder could be

attributed to impingement syndrome of the right shoulder. (R. 100.) Manseau

recommended diagnostic and therapeutic shoulder arthroscopy, and stated that Plaintiff

could not use his right arm for overhead work. (*Id.*)

After the first surgery of his right shoulder, Plaintiff's treating physician, Dr.

Manseau, stated that Plaintiff was doing well. (R. 99.) He prescribed physical therapy

and pain medications. (*Id.*) Upon a follow-up examination on January 3, 2001, Manseau

noted that Plaintiff's range of motion was doing "quite well," but that Plaintiff lacked

strength in the shoulder. (R. 98.) Pursuant to Plaintiff's request for a second opinion

regarding his back and neck, Manseau referred him to Dr. Mark Oliver.[26] (*Id.*)

---

[26] Dr. Discalfani was the neurologist to whom Plaintiff ultimately presented. (R. 95.)

Although Plaintiff complained of "popping" and pain in his right shoulder on a February 2001 visit to him, Manseau recommended that he was "at least capable of light duty position max lift is 5 pounds and no regular use of the right arm." (R. 97.) Manseau administered a cortisone injection "to calm the shoulder down," and stated that if Plaintiff did not improve, he might need a second operation. (*Id.*)

After the second surgery, on May 30, 2001, Manseau found improvements in Plaintiff's range of motion but recommended physical therapy to address Plaintiff's complaints of pain. (R. 95.) Manseau stated that Plaintiff could perform limited overhead activities. (*Id.*) On July 30, 2001, Manseau discharged Plaintiff with a permanent lifting restriction of 15 pounds and limited overhead activities. (R. 93.)

Dr. Mangala Shetty of the Pain Management Center administered cervical epidural steroid injections in August and September of 2001. (R. 105-107.) Plaintiff experienced relief in neck pain with the injections, but the pain in his arm was persistent. (*Id.*)

From November through December 2001, Plaintiff underwent vocational evaluation at Goodwill Industries. (R. 194-204.) William J. Kenney, M. Ed. found that Plaintiff experienced "orthopedic limitations," and recommended family counseling, and Plaintiff's continued pursuit of his vocational goal of obtaining a position as an automotive repair facility service writer. (*Id.*)

On July 9, 2002, Plaintiff presented to Adam Alpers, D.O, of Prompt Primary Care of Ocala, for a consultative medical evaluation at the request of the Division of Disability Determination. (R. 182.) Plaintiff told Alpers he was depressed, experiences headaches, and pain in his lower back. (*Id.*)Alpers assessment included depression,

continued right shoulder pain, and numbness in the right arm. (R. 184.) Alpers

suggested that Plaintiff's ability to perform physical work is "greatly limited," but noted

that he had the potential for retraining to perform sedentary work. (*Id.*)

Plaintiff undertook a mental status examination by Gary Honickman, Ph.D., also

at the request of the Division of Disability Determination. (R. 150-151.) The psychologist

noted that Plaintiff drove himself to the office, was friendly, polite, and exhibited no

unusual mannerisms. (*Id.*) He "was felt to be moderately depressed in mood," but his

insight and judgment "was [*sic*] felt to be good." (*Id.*) It was noted that Plaintiff cooks and

shops, but receives help from his three kids in cleaning the house. (*Id.*) Honickman

noted that "he is felt to suffer from a Pain Disorder." (*Id.*)

The record contains a psychiatric review technique performed by a non-

examining state agency physician, Val J. Bee, Psy. D., a clinical psychologist., on April

19, 2002. (R. 152-165.) Bee found that Plaintiff displayed pain disorder (R. 158), but

found that it presented no restrictions in activities of daily living, social functioning, or in

maintaining concentration, persistence, and pace. (R. 162.) Bee also found no evidence

of extended durations of decompensation. (*Id.*) Bee specifically noted that Plaintiff's

medical record "[...] does not suggest a substantial psychogenic component to

claimant's pain. He has some depressed moods, but generally appears to cope well

within physical restrictions." (R. 164.)

## V. <u>DISCUSSION</u>

Plaintiff argues that the ALJ erred by applying the medical vocational grids

because he suffered from at least one severe non-exertional impairment. Because

Plaintiff's alleged pain and depression did not, alone or in combination, present a severe

non-exertional impairment, the Court finds that the ALJ's reliance on the grids was appropriate. Therefore, for these reasons, and those discussed below, the Court rejects Plaintiff's argument.

**A. Use of the medical vocational grids was appropriate**

The Eleventh Circuit has instructed that "exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[27] The phrase "significantly limit basic work skills" means limitations "that prohibit a claimant from performing a 'wide range' of work at a given work level."[28] If the ALJ determines that a claimant's non-exertional limitations do not significantly limit the claimant's basic work skills at the given level of exertion, then the ALJ may rely on the grids to determine if the claimant is disabled.[29]

Here, after considering the entire record before him, the ALJ explicitly stated that Plaintiff's depression is mild and does not restrict his ability to perform work related activities. (R. 17-18.) He found the same with respect to Plaintiff's alleged pain,[30] and properly concluded that Plaintiff retained the residual functional capacity to perform a significant range of light to sedentary work. (R. 19 & 20.) The ALJ determined that

---

[27] Jones at 1229. (Emphasis added).

[28] Phillips v. Barnhart, 357 F, 3d 1232, 1243 (11th Cir. 2004) *Citing* Foote 67 F. 3d 1553, 1559 (11th Cir. 1995)(The ALJ must determine "whether the non-exertional limitations are severe enough to preclude a *wide range of employment at the given work capacity level*.")(emphasis added).

[29] *Id.*

[30] The Court addresses the ALJ's treatment of Plaintiff's allegations of pain in more detail at part B of the instant discussion.

Plaintiff's limited use of his right shoulder (not his alleged depression or pain) prevented him from performing the *full range* of light work. (*Id.*)

This conclusion is consistent with the ALJ's thorough consideration and discussion of the record in this case.  Notably, Plaintiff's complaints of depression are conspicuously absent in the great majority of his medical records. In fact, it was not until Plaintiff presented to Dr. Shetty in late 2001 that it was even suggested he seek treatment. The only interaction that Plaintiff had with a psychologist was during the course of one mental status examination by Gary Honickman, Ph.D. Moreover, that interaction took place at the request of the Division of Disability Determination. (R. 150-151.) The psychologist noted that Plaintiff drove himself to the office, was friendly, polite, and exhibited no unusual mannerisms. (*Id.*) Although he exhibited a moderately depressed mood, Plaintiff's insight and judgment "was [*sic*] felt to be good." (*Id.*) It was noted that Plaintiff cooks and shops, and the evaluation was unremarkable except for Honickman's "feeling" after a one-time visit that Plaintiff suffers from a Pain Disorder. (*Id.*) However, even taking this statement as a diagnosis, the mere diagnosis of Pain Disorder does not, alone, constitute a severe impairment where, as here, it does not significantly limit one's ability to perform work-related activities.

The psychiatric review technique performed by Val J. Bee, Psy. D., a clinical psychologist., on April 19, 2002, bolsters the ALJ's conclusion that Plaintiff's depression did not constitute a severe impairment which would preclude the use of the grids in this case. (R. 152-165.) Bee found that although Plaintiff displayed pain disorder (R. 158), it did not present restrictions in activities of daily living, social functioning, or in maintaining concentration, persistence, and pace. (R. 162.) Bee also found no evidence of extended

durations of decompensation (*Id.*), and specifically noted that Plaintiff's medical record

"[...] does not suggest a substantial psychogenic component to claimant's pain. He has

some depressed moods, but generally appears to cope well within physical restrictions."

(R. 164.)

Finally, despite his testimony that he was experiencing emotional and financial

hardship after his divorce (R. 229), Plaintiff admitted that although he gets depressed, it

is not bad enough to seek treatment and it does not happen "that often." (R. 65.)

In light of the foregoing evidence of record, the ALJ had every reason to

conclude that Plaintiff's allegedly debilitating pain and depression would not preclude

him from performing work at the light to sedentary level of exertion. With this well-

substantiated finding, it was proper for the ALJ to apply the grids in this case.[31]

## B. The ALJ Properly Discounted Plaintiff's Testimony of Debilitating Pain and Depression

To the extent that Plaintiff contends that the ALJ erred in rejecting his testimony

of debilitating pain, such an argument is also due to be rejected.[32] Pain is a

non-exertional impairment.[33] Congress has determined that a claimant will not be

considered disabled unless she furnishes medical and other evidence (*e.g.*, medical

signs and laboratory findings) showing the existence of a medical impairment which

---

[31] Phillips at 1243-1244 (11th Cir. 2004)(Once the ALJ resolves that a claimant's non-exertional impairments do not preclude a wide range of employment at a given level of exertion, the ALJ may rely on the grids.)

[32] Plaintiff's memorandum includes the following sentence: "In the instant case, the claimant complained of severe pain and other non-exertional impairments." (Doc. 6, p. 4.)

[33] Foote, 67 F.3d at 1559.

could reasonably be expected to produce the pain or symptoms alleged.[34] Pain alone can be disabling, even when its existence is unsupported by objective evidence,[35] although an individual's statements regarding pain do not provide conclusive evidence of a disability.[36] The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[37]

An ALJ must apply the Eleventh Circuit's "pain standard" when, as here, a claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms.[38] In order to establish a disability based on testimony of pain and other symptoms, the pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[39]

---

[34] 42 U.S.C. § 423(d)(5)(A).

[35] *See* Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

[36] 42 U.S.C. § 423(d)(5)(A).

[37] 20 C.F.R. § 404.1528.

[38] Foote at 1560.

[39] Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) *quoting* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[40] assessment to Plaintiff's complaints of pain. Although he did not cite the exact language of the standard, the ALJ's discussion and findings disclose that the standard was applied. Moreover, the ALJ articulated the same language regarding the subjective pain testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[41]

After applying the standard to the facts of this case, the ALJ determined that Plaintiff, indeed, met the standard. As to the first part of the pain standard, the ALJ found that Plaintiff suffered from cervical, thoracic, and lumbar strain and right shoulder impingement syndrome - underlying medical conditions. (R. 17.) Further, although he did not find objective medical evidence confirming the severity of the alleged pain arising from the foregoing medical conditions (the second part of the standard), the ALJ *did* find that Plaintiff satisfied the third part of the standard by providing evidence that his medical conditions were of such a severity that they could reasonably be expected to produce some limitations. (R. 18.) However, the ALJ qualified this determination by referencing multiple clinical findings and Plaintiff's history of complaints to medical professionals which contradicted his testimony during the hearing about significant limitations of function. (R. 17-19.)

Such findings, at the very least, imply that the pain standard was satisfied. This implication is made more obvious by the ALJ's subsequent evaluation of the credibility

---

[40] Marbury at 839.

[41] *See* Wilson at 1226.

of Plaintiff's complaints of disabling pain and depression - an evaluation that need not

be undertaken where the pain standard has not been met in the first place.[42]

With respect to Plaintiff's testimony about disabling pain during his period of

insured status, the ALJ found that his "testimony is only partially credible." (R. 18.) The

Eleventh Circuit has stated that where an ALJ discredits a claimant's testimony about

subjective complaints, he must articulate explicit and adequate reasons for doing so,[43]

or the record must be obvious as to the credibility finding.[44] While an adequate

credibility finding need not cite "particular phrases or formulations [...] broad findings

that a claimant lacked credibility and could return to her past work alone are not enough

to enable a court to conclude that the ALJ considered her medical condition as a

whole."[45] As a matter of law, the failure to articulate the reasons for discrediting

subjective pain testimony requires that the testimony be accepted as true.[46] A Court will

not disturb a clearly articulated credibility finding supported by substantial evidence of

record.[47]

---

[42] *See* Marbury at 839 ("The Secretary must consider a claimant's subjective testimony of pain if he finds [that the pain standard is satisfied.]")

[43] Wilson at 1225.

[44] Foote at 1561-62;  Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[45] Foote at 1562-1563.

[46] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[47] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

The Court finds that the ALJ *did* articulate explicit and adequate reasons to discredit Plaintiff's testimony about disabling pain, and further finds that the ALJ's reasons are supported by substantial evidence of record.

First, the ALJ accurately referenced the medical records kept by Drs. Kim and Manseau to support his rejection of Plaintiff's complaints of debilitating pain in his back, neck, and shoulders. Dr. Kim, who treated Plaintiff on multiple occasions immediately following his injury on the job, found that Plaintiff's MRI of the lumbar spine revealed no evidence of stenosis, disc herniation, or degenerative disc disease. The MRI of the cervical and lumbosacral spine were "completely normal with no abnormal findings," (R. 129) with the exception of a diffuse disc bulge at C5-C6. (R. 134.) He also found that an MRI of the thoracic spine was normal, with no evidence of a disc herniation or spinal stenosis, but with some evidence of mild degenerative discogenic changes. (R. 133.) By May 16, 2000, Dr. Kim discharged Plaintiff for full duty with 0% partial impairment. (R. 131.)

Dr. Manseau - who treated Plaintiff's shoulder, neck and back for over a year, and who performed his shoulder surgery - found that Plaintiff's symptoms were improving, and concluded that physical therapy would lead to even more improvement. R. 95.) After the second shoulder surgery, Manseau stated that Plaintiff could perform limited overhead activities (*Id.*), and as of July 30, 2001, Manseau discharged Plaintiff with a permanent lifting restriction of 15 pounds and limited overhead activities. (R. 93.) Notably, the ALJ incorporated this lifting restriction into his RFC assessment. (R. 18.)

The ALJ also reviewed Plaintiff's own testimony during the hearing about activities of daily living which were incongruent with his testimony of debilitating

shoulder, back and neck pain. He correctly noted that Plaintiff cooks for himself and his three kids, makes sure that all three get to and from school, and testified that he could lift about 10 pounds, stand for 20 minutes, walk for 1 block, and sit for 20 minutes at a time. (R. 15, 223-227.)

It follows that the ALJ explicitly and adequately articulated reasons to discredit Plaintiff's complaints of disabling pain during his insured status, and all of the reasons the ALJ used to discredit such complaints are amply supported by the record. Because the task of choosing between conflicting evidence is one that is peculiarly suited to the fact finder,[48] and because there is substantial evidence that supports the ALJ's decision to discredit Plaintiff's complaints of debilitating pain, the Court will not disturb the ALJ's determination that Plaintiff's pain was not so severe as to preclude him from performing light to sedentary work.

## VI.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, this 22nd  day of July, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges,
    Senior United States District Judge

    Counsel of Record

---

[48] Hand v. Heckler, 761 F. 2d 1545,1549 (11th Cir. 1985).